IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IBRAHIM MANDOUR,　　　　　　　　　　　　　　No. C 09-05964 SI

　　　　　　Petitioner,　　　　　　　　　　　　　　　　**ORDER GRANTING RESPONDENTS'
　　　　　　　　　　　　　　　　　　　　　　　　　　　　MOTION TO DISMISS**
　v.

ERIC HOLDER, et al.,

　　　　　　Respondents.
　　　　　　　　　　　　　　　　　　　　　　　／

　　　　Respondents' motion to dismiss petitioner's habeas petition is currently set for oral argument on April 9, 2010. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the papers submitted, and for good cause shown, the Court hereby GRANTS the motion to dismiss.

**BACKGROUND**

　　　　Petitioner Ibrahim Mandour filed a petition for writ of habeas corpus on December 21, 2009, seeking an order compelling the United States Citizen and Immigration Service ("CIS") to grant his visa petition and application for adjustment of status based on his marriage to a United States citizen. The background facts leading up to the filing of the petition are as follows.

　　　　Petitioner is a native and citizen of Egypt who entered the United States without lawful admission in 1999. Petitioner married a United States citizen, Lydia Park, in February 2001. Marriage Certificate, ex. A to Petition. In April 2001, Ms. Park filed an I-130 Petition for Alien Relative ("visa petition") on petitioner's behalf, and petitioner filed an accompanying I-485 Application for Adjustment

of Status ("adjustment application").[1]  I-130 & I-485, ex. C & D to Petition.  The visa petition was approved on July 31, 2002.[2]  Petition, ex. 1 to MTD.  Petitioner was called for an interview on his adjustment application in July 2002, and was notified in August 2002 that the application had been "retained for processing."  Aug. 24, 2002 Letter, ex. E to Petition.  Petitioner was then notified in March 2003 that consideration of his adjustment application was continued for ninety days to give him an opportunity to submit certain required documentation demonstrating the facts surrounding his entry into and physical presence in the United States.  March 6, 2003 Letter, ex. E to Petition.  Petitioner submitted the additional documentation, and his counsel was notified in March 2004 that the application had not yet been decided because CIS was still awaiting the results of an FBI background check.  March 24, 2004 Email, ex. G to Petition.  Petitioner's counsel was apparently informed in November 2004 that the adjustment application "was still pending review" and "waiting its turn to be reviewed."  Sept. 27, 2005 Letter, ex. F to Petition.

In January 2008, petitioner's counsel sent a letter to a CIS official memorializing a telephone conversation in which counsel and the official had apparently agreed that CIS would "follow up with Washington so that this case can finally be brought to resolution after years of being in pending status."  Jan. 11, 2008 Letter, ex. H to Petition.  Thereafter, petitioner apparently learned through a Congressional inquiry that although his FBI background check had been completed as of August 2006, his adjustment application was still under consideration.  July 29, 2008 Letter, ex. I to Petition.

Meanwhile, petitioner and Ms. Park divorced on July 22, 2008.  Judgment, ex. K to Petition.  In February 2009, Ms. Park received a notice to appear for another interview for the visa petition that, apparently unbeknownst to petitioner, had been approved back in 2002.  Feb. 27, 2009 Notice, ex. J to Petition.  Petitioner's counsel wrote to the CIS San Francisco Field Office Director to request that, in lieu of requiring petitioner and Ms. Park to appear for another interview, CIS "approve the adjustment of status *nunc pro tunc* to a date prior to the final dissolution of marriage" to avoid the "potentially harsh

---

[1] "Approval of an I-130 petition . . . is . . . a prerequisite for the nonresident alien to file a Form I-485 application for adjustment to lawful permanent resident status when an immigration visa becomes available." *Davila-Ruiz v. Holder*, 327 F. App'x 738, 740 (9th Cir. 2009).

[2] According to petitioner, he was never informed that the visa petition had been approved.

2

results" of the long delay in processing the application. Sept. 4, 2009 Letter, ex. L to Petition.

Petitioner and Ms. Park attended an interview with CIS on September 18, 2009. Kaiser Decl. at 1, ex. M to Petition. According to petitioner's counsel, "Every aspect of [petitioner's] former marriage was explored by the CIS Examiner and Lydia Park, although now divorced from Mr. Mandour personally appeared answering all CIS questions and repeating her insistence that she was unwilling to withdraw the case." *Id.* Thereafter, in October 2009, the CIS Field Director sent Ms. Park a letter stating that the visa petition had been automatically revoked pursuant to 8 C.F.R. § 205.1(a)(3)(i)(D) due to Ms. Park and petitioner's divorce. Oct. 6, 2009 Letter, ex. N to Petition. Two weeks later, petitioner was served with a Notice to Appear for removal proceedings. Notice to Appear, ex. O to Petition.

Petitioner subsequently filed the present habeas petition seeking to compel CIS to reinstate the approval of the visa petition and grant the adjustment application *nunc pro tunc*. Presently before the Court is respondents' motion to dismiss the petition for lack of jurisdiction.

## DISCUSSION

Respondents move to dismiss the habeas petition for lack of jurisdiction. Traditionally, district courts had jurisdiction to entertain habeas petitions brought under 28 U.S.C. § 2241 which raised legal or constitutional challenges to the denial of immigration relief. *See, e.g.*, *Rojas-Garcia v. Ashcroft*, 339 F.3d 814 (9th Cir. 2003) (considering appeal from district court's denial of habeas petition challenging denial of adjustment application). In 2005, however, Congress enacted the REAL ID Act, Pub. L. No. 109-13 (2005), which eliminated district court jurisdiction over challenges to final orders of removal, vesting that jurisdiction exclusively in the courts of appeals. The Act also imposed a "zipper clause" which "consolidates or 'zips' judicial review of immigration proceedings into one action in the court of appeals." *Singh v. Gonzales*, 499 F.3d 969, 967 (9th Cir. 2007). The effect of the zipper clause is that all challenges to government actions which lead up to removal proceedings must be raised in a single petition for review from the final removal order, filed with the appropriate court of appeals. 8 U.S.C. § 1252(b)(9) ("Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding

brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."); *Morales-Izquierdo v. Dep't of Homeland Sec.*, No. 08-35965, slip op. at 5126 (9th Cir. Apr. 2, 2010) ("Aliens subject to removal for the first time [are] limited by the 'zipper clause' to challenging denials of adjustment of status in petitions for review in our court."). The Ninth Circuit has held that this "zipper clause" indicates a "congressional preference for judicial review of adjustment-of-status challenges in petitions for review of orders of removal." *Morales-Izquierdo*, slip op. at 5125.

In the Court's view, the REAL ID Act and related provisions of the INA deprive this Court of jurisdiction to consider petitioner's claims. Although there is as yet no final order of removal from which petitioner may seek Ninth Circuit review, the INA's "zipper clause" prevents this Court from hearing any challenge to the government actions that have placed petitioner in his present, unfortunate position.

Both parties address the issue of whether petitioner may seek to amend his petition to request mandamus relief. Mandamus relief, however, is available only "to compel an officer or employee of the United States or any agency thereof to perform *a duty owed to the plaintiff*." 28 U.S.C. § 1361 (emphasis added). Although mandamus relief might well have been available to petitioner had he sought it while approval of his adjustment application was still pending, mandamus relief is unfortunately no longer available to petitioner. The Court cannot now compel CIS to approve an adjustment application which is dependent upon a visa petition that has been automatically revoked by operation of law. *See* 8 C.F.R. § 205.1(a)(3)(i)(D) ("The approval of a [visa] petition . . . is revoked as of the date of approval . . . . Upon the legal termination of the marriage when a citizen or lawful permanent resident of the United States has petitioned to accord his or her spouse immediate relative or family-sponsored preference immigrant classification"). Granting leave to amend the petition to seek mandamus relief would therefore be futile.

If the facts in the petition are true, the government's handling of petitioner's case raises serious due process concerns. The government offers no explanation for failing to adjudicate petitioner's adjustment application during the seven-year period in which petitioner was married to Ms. Park, even after petitioner's FBI check was completed in 2006. There has been no suggestion that petitioner's

4

marriage was anything but bona fide, or that the adjustment application would have been denied on the merits but for the automatic revocation of the visa petition after the divorce. Although this Court's jurisdiction is precluded by the Real ID Act and the related provisions of the INA, petitioner may raise his constitutional and any other challenges to the government's actions in a petition for review from the entry of a final removal order, should such an order be entered by the immigration courts.

## CONCLUSION

For the foregoing reasons, respondents' motion to dismiss the petition for writ of habeas corpus for lack of jurisdiction is GRANTED. (Docket No. 4).

**IT IS SO ORDERED.**

Dated: April 5, 2010

SUSAN ILLSTON
United States District Judge